Giragosian *v.* Philadelphia (et al., Appellant).

Argued November 21, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*I. R. Kremer,* with him *Max E. Cohen, Joseph D. Shein,* and *Henry Temin,* for appellant.

*Marshall A. Bernstein,* with him *Bernstein & Bernstein,* for appellees.

*Avram G. Adler,* with him *Abraham E. Freedman,* and *Freedman, Landy and Lorry,* for appellees.

*David Berger,* City Solicitor, and *I. Jerome Stern,* Assistant City Solicitor, for City of Philadelphia, appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 12, 1959:

This litigation arose out of a series of rapidly happening mishaps which found a City of Philadelphia dump truck leaving its own side of the highway, crossing over to the wrong side of the highway, crashing into a car traveling in the opposite direction, then leaving the road completely to engulf a parked tractor-trailer, and finally emptying the garbage contents of the truck on to an innocent pedestrian waiting for a bus. Four victims of the multiple collision—Rose and Sarkis Giragosian, who were riding in the oncoming car; Daniel P. Heatwole, driver of the parked tractor-trailer; and Middle Atlantic Truck Rentals, owners of the tractor-trailer—entered suit against the City of Philadelphia, which brought in an additional defendant by the name of Mrs. Ruth F. Baranack, the driver of a car which had no physical contact with the colliding vehicles, but was charged with being the original cause which set

off the vehicular chain-reaction, to be hereinafter described.

In the ensuing three lawsuits (Rose Giragosian and Sarkis Giragosian, together with Garabed Giragosian, husband of Rose and father of Sarkis, all combined in one action), the jury returned verdicts for all the plaintiffs. Mrs. Baranack moved for judgment n.o.v., and a new trial, which motions were refused by the lower court. She has appealed to this Court, asking for a new trial on the basis that the verdicts were against the weight of the evidence and that the one in favor of Heatwole was excessive.

From a reading of the printed record of some 350 pages, a studying of photographs introduced at the trial, and consideration of the briefs, plus the oral arguments of counsel, we arrive at the following narrative of the strange happenings on August 25, 1955, on U. S. Route No. 1, also known as Roosevelt Boulevard, just north of the line dividing Philadelphia and Buck Counties.

On the day indicated, at about 3 o'clock in the afternoon, Clifford Donald, an employee of the City of Philadelphia, was driving a Reo five-ton dump truck, in a northern direction on the above-named Roosevelt Boulevard which is made up of two northbound and two southbound lanes. He had just crossed the bridge spanning Poquessing Creek, doing some 30 miles an hour, when he caught sight of a Nash automobile entering the highway ahead of him, it apparently having just been serviced at a gasoline station which bordered the highway. Fearing a collision with the car, which had now practically blocked his advance, Donald threw on his brakes and swerved to the left. From the frying pan of an apprehended collision with the Nash, he fell into the fire of a collision with a Chevrolet which was being driven by Mrs. Giragosian in one of the southbound lanes of the highway. As the truck and Chevro-

let collided, Donald not only lost steering control of the truck, but the impact released the dumping device of his vehicle, which was catapulted onto the cab of a tractor-trailer parked by the side of the road. The cab was occupied by Daniel P. Heatwole who sustained serious injuries; and then, as already stated, the contents of the garbage truck were hurled onto an unsuspecting pedestrian, a Mrs. Sanderson, waiting for a bus, who, although eventually emerging from the rubbish which covered her, enigmatically does not appear in this lawsuit.

Prior to the trial, the City of Philadelphia entered into a settlement with Heatwole, the Middle Atlantic Truck Rentals, Inc., and the Giragosians under the provisions of the Uniform Contribution Among Tortfeasors Act. The City, therefore, did not appeal from the verdicts, thus leaving as the lone appellant, Mrs. Baranack, who, with maps, photographs, computations, measurements and argument, urges upon us the application of the incontrovertible physical facts rule to combat and overcome the testimony presented in behalf of the plaintiffs. An aerial photograph of the locale, taken shortly after the accident, reveals skid marks in a 90-foot arc beginning just north of the Poquessing Creek Bridge and ending at the point the truck encountered the Giragosian car. The city truck driver Clifford Donald testified that when he saw Mrs. Baranack in her Nash car moving toward the highway ahead of him, he took his foot off the accelerator while moving to the left of the highway, and that "just as I got about 25 to 30 foot from where she was at she shot out to the middle of the highway and blocked both lanes."

Mrs. Baranack testified that as she left the gasoline station she saw the truck approaching in the northbound lanes at 50 miles per hour and she thus remained stationary facing the highway, but not on it, although

the bumper of her car may have projected a foot over the margin of the road. She argues, in the first place, that since her car never touched the city truck she could in no way be responsible for the several crashes. This argument, of course, scarcely needs an answer. A guide who gives wrong directions which send mountain climbers toppling over a cliff is certainly responsible for the resulting disaster. The person who throws a railroad tie into the path of a rapidly moving car, which must swerve in order to avoid hitting it and in doing so overturns, cannot be heard to say that he is without fault because the tie did not touch the overturned vehicle. Any person who, because of a negligent act, causes another person to alter his normal conduct and by that alteration is forced into unforseeable danger and injury, is liable in damages for the injuries inflicted. And this is true regardless as to whether or not physical contact is established between the original actor and the injured person.

It is to the appellant's credit that she does not press unduly the non-contact argument. However, she does insist that the skid marks in the road show that Donald veered away from the northbound lane of the highway before he had reason to apprehend danger from her car and that, therefore, in effect she was only a spectator to the accident. There were two fuel tanks at the gasoline station. She said she got gasoline from the one furthermost from the Poquessing Bridge—215 feet away. She argues that the "uncontradicted skid marks" prove her contention that "the Baranack car was over 200 feet from the City truck when the City truck 'swung to his left to avoid hitting' the Baranack automobile."

It is true that these skid marks are as communicable as a book in relating what happened to the city truck, but the book is minus those pages which tell when and

where Mrs. Baranack appeared on the highway. Without those pages, the skid marks, insofar as telling how and why the accident occurred, are as unintelligible as Egyptian hieroglyphics in the dark. The hub of the wheel of the accident, the fulcrum against which the lever of fate upset the truck, is dependent precisely on knowing the moment and the spot that Mrs. Baranack pushed her car into the path of the truck and thereby caused it to deviate its course to the other side of the highway.

If, in point of reality, she was as far away as 200 feet when Donald swung to the left, she would indeed have been only a spectator to the antics of a rabbit-scared motorist. The difficulty about Mrs. Baranack's contention is that she is superimposing her testimony over the skid marks, but the skid marks do not tell *where the Baranack car was* when they began their frightened scrawl.

The appellant cannot possibly support her case with the incontrovertible physical fact rule. We said in *Mull v. Bothwell*, 338 Pa. 233, 238, that "The incontrovertible physical fact rule does not apply where there are possible variables and where moving objects are concerned." There are many possible variables in the instant case, even out of the appellant's own mouth. Although she testified at the trial that the truck began its swerve to the left just as it crossed the bridge and while she was yet at the gasoline station (over 200 feet away), she said in a pre-trial statement: "When still some thirty feet from my vehicle, the truck swerved sharply to left in a wide arc." The day after the accident she told a police officer: "After I got the gas I pulled to the first lane of the highway."

Mrs. Mayer, who was in the Nash car with Mrs. Baranack, testified that the truck was 125 feet away when she heard the screeching of the brakes. In a pre-

trial statement she said: "The last time I saw it it was, well, as I said, I heard this screeching of brakes, and it was about fifty feet from our car."

Edward Fahy, the driver of a truck which was following Donald's truck, testified that just as Donald was crossing the bridge he saw Mrs. Baranack's car in his path, and it appeared to him "to be splitting the two-lane highway, north." He explained by this expression that "the front wheels were in one lane and the back wheels were in the other of the northbound lanes."

But, the appellant says in her brief: "The distance so traversed by the Baranack car would not be more than 20 feet the base of a right (equilateral) triangle with its apex at the edge of the road and its base at the center of the road." Of course, this puts a new light on the question, but not a very bright light. It was for the jury to decide whether this strange triangle wiped out Mrs. Baranack's admission made immediately after the accident, namely, "Oh my God, it was all my fault." Mrs. Baranack did not deny making the remark but she said she intended it as a question. Of course, it is common knowledge that punctuation can radically change the sense of a phrase, but it must be admitted that the logic and the grammar of the utterance in question would be on the side of its being an affirmance rather than an interrogation. Two witnesses testified to hearing it, and understood it as an affirmance.

It would appear that it was Mrs. Baranack's intention, after leaving the gasoline station, to pull across the northbound lanes to the southbound lanes and then proceed southward on Roosevelt Boulevard. In fact, the day after the accident she was asked by a police officer: "What were you thinking about when you pulled out into the middle of the highway?" and she replied: "I thought I could make it."

Her counsel argues in his brief that "she could rely on the truck obeying the law and giving her the right of way." But it could only be on the basis of an "equilateral triangle" that she could have the right of way because The Vehicle Code specifically says: "The driver of a vehicle entering a highway from a private road or drive shall yield the right of way to all vehicles approaching on such highway." (75 P.S. §573(a))

A motorist who has quitted a busy highway to refuel at a gasoline station may only return to the highway after being assured by appropriate surveillance that he has enough time to re-enter and take his place in the assembly line before the arrival of the nearest approaching vehicle. It is clear, under the testimony of practically all the witnesses, including herself, that Mrs. Baranack did not have time to cross the highway without colliding with the city truck. Mrs. Baranack said the truck was travelling at 50 miles per hour. Her companion said it was moving at 50-55 miles per hour. Even if the distance between the two vehicles had been 215 feet, the truck would have traversed that distance in not more than 3 seconds. Under these circumstances, this Court could hardly be asked to declare that it was against the weight of the evidence for a jury to find that Mrs. Baranack's action contributed to the happening of the accident. It must be remembered that the jury did not place all the blame on Mrs. Baranack. By their verdict they decided that Donald was at fault in driving his truck at a high rate of speed and that Mrs. Baranack was at fault in entering the highway in the face of a rapidly moving vehicle. The accident could not have occurred without the combined negligence of both drivers, who, like the two jaws of a nutcracker, mauled the plaintiffs between them. We are satisfied that the verdict was not against the weight of the evidence and that the motion for a new trial on

484

that basis must be denied.

The appellant also asks for a new trial on the basis that the verdict of $22,500 in favor of Daniel P. Heatwole was excessive. We do not believe that the record justifies the complaint of excessiveness. Judge FLOOD of Court of Common Pleas No. 6 of Philadelphia County, so well covers this feature of the appeal that nothing needs to be added to his able discussion on the subject.

Judgments affirmed.